396 S.E.2d 191

**Richard CRUCIOTTI,**

v.

**Tom McNEEL, West Virginia State Superintendent of Schools; The Board of Education of Ohio County; and Henry Marockie, Superintendent of Ohio County Schools.**

**No. 19083.**

Supreme Court of Appeals of
West Virginia.

July 20, 1990.

Jeremy C. McCamic, McCamic & McCamic, Wheeling, for WV State Superintendent of Schools et al.

Diana H. Crutchfield, Moundsville, for Richard Cruciotti.

McHUGH, Justice:

This case is before the Court upon the appeal of Tom McNeel, state superintendent of schools, the Board of Education of Ohio County (the Board), and Henry Marockie, superintendent of Ohio County

Schools.[1] The appellee is Richard Cruciotti. The appellants are aggrieved by the February 9, 1989 order of the Circuit Court of Ohio County.

## I

In July, 1984, the Board posted an announcement of employment vacancies. Among other positions of employment, such announcement included the following: "Physical Education Teacher with Language Arts 7–12 and Athletic Trainer Endorsement Preferred. Also will be expected to coach." This position was available at Triadelphia Junior High School.

Due to an apparent unavailability of qualified applicants, however, the Board amended the announcement as follows: "Physical Education Teacher and Athletic Trainer."

The appellee, by two letters, expressed his desire to be considered for the position of physical education teacher, but not the position of athletic trainer. Another applicant was hired for the position.

The appellee filed a grievance with the Board, alleging that the job posting constituted an "improper joinder" of employment positions, in violation of *W.Va.Code*, 18A–4–16 [1982].[2]

Following a hearing before the Board, the appellee's grievance was denied by the appropriate grievance response procedures.

The state superintendent upheld the Board's ruling.

The appellee then filed a petition for a writ of *certiorari* in the Circuit Court of Ohio County. A hearing was held on August 15, 1986. On September 23, 1986, the circuit court issued an opinion and order, holding that there was no "improper joinder" of positions, and, essentially, upholding the state superintendent's ruling.

On December 8, 1986, the appellee moved for relief pursuant to Rule 60 of the *West*

---

1. Tom McNeel and Henry Marockie no longer serve in the positions which they occupied during the events in this case. Henry Marockie is now the state superintendent of schools.

2. *W.Va.Code*, 18A–4–16 [1982] is discussed in section II of this opinion.

*Virginia Rules of Civil Procedure.*[3] Such motion was granted and following hearings on the matter, the circuit court issued another opinion and order on February 9, 1989, this time holding that the Board's posting violated *W.Va.Code,* 18A–4–16 [1982], as an "improper joinder." It is this order of the circuit court which is appealed in this case.

## II

The issue for which we agreed to consider this appeal is whether the position of athletic trainer is "extracurricular" so as to require a separate contract of employment pursuant to *W.Va.Code,* 18A–4–16 [1982].[4]

*W.Va.Code,* 18A–4–16(1) [1982] provides:

(1) The assignment of teachers and service personnel to extracurricular assignments shall be made only by mutual agreement of the employee and the superintendent, or designated representative, subject to board approval. *Extracurricular duties shall mean, but not be limited to, any activities that occur at times other than regularly scheduled working hours,* which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, and which occur on a regularly scheduled basis.

(emphasis supplied)

Subsections (2) and (3) of *W.Va.Code,* 18A–4–16 [1982] provide for a mutual agreement between the teacher and the superintendent, or a designated representative, regarding extracurricular assignments and require that such agreement be in writing.

Subsection (4) of *W.Va.Code,* 18A–4–16 [1982] provides:

(4) An employee's contract of employment *shall be separate from* the extracurricular assignment agreement provided for in this section and shall not be conditioned upon the employee's acceptance or continuance of any extracurricular assignment proposed by the superintendent, a designated representative, or the board.

(emphasis supplied)

The 1984–85 salary schedule for coaches in Ohio County Schools, which is in the record in this case, includes the position of athletic trainer. The salary for the athletic trainer position at the junior high level, as set forth in that schedule, is $265 per year. The Board contends that because the annual salary is so low, no one will apply for the position. Therefore, the Board maintains that the athletic trainer position is not an extracurricular position, but, rather, is a professional service, tantamount to a teaching position.

Among other reasons, the Board points out that Policy No. 5112 of the Ohio County Board of Education[5] requires that: "Athletic trainers shall come under the definition of professional educators as specified in § 18–1–1 and § 18A–1–1 of the *School Laws of West Virginia.*" This reference to "professional educator" is to the definition of that term, contained in *W.Va. Code,* 18A–1–1 [1981]. Specifically, *W.Va. Code,* 18A–1–1(c) provides, in part, that " 'Professional educator' shall be synonymous with and shall have the same meaning as 'teacher' as defined in [*W.Va.Code,* 18–1–1]." *W.Va.Code,* 18–1–1(g) [1980] provides:

(g) 'Teacher' shall mean teacher, supervisor, principal, superintendent, public

---

**3.** Rule 60 is discussed in section III of this opinion.

**4.** This statutory provision, originally enacted in 1981, followed this Court's decision in *State ex rel. Hawkins v. Tyler County Board of Education,* 166 W.Va. 363, 275 S.E.2d 908 (1980). In syllabus points 2 and 3 of *Hawkins,* this Court held:

2. The assignment of teachers to extracurricular duties is a matter of educational policy within the discretion of the county boards of education.

3. The board of education's power to assign extracurricular duties to teachers is not unlimited and must be exercised in a reasonable manner. Assignments must be nondiscriminatory, related to a teacher's interest and expertise, and must not require excessive hours beyond the contractual workday.

**5.** Policy No. 5112 of the Ohio County Board of Education is, in large part, based upon Policy No. 2422.13 of the West Virginia Board of Education.

school librarian; registered professional nurse, licensed by the West Virginia board of examiners for registered professional nurses and employed by a county board of education, who has a baccalaureate degree; or any other person regularly employed for instructional purposes in a public school in this state[.]

Moreover, the Board argues that because *some* of the duties of an athletic trainer take place during the regular school day, it is not a "true extracurricular position."

We have not had occasion to apply the provisions of *W.Va.Code*, 18A–4–16 [1982] to the type of factual situation presented in this case.[6]

As set forth previously in this opinion, *W.Va.Code*, 18A–4–16(1) [1982] defines "extracurricular duties" as meaning, "but not ... limited to, any activities that occur at times other than regularly scheduled working hours, which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, *and* which occur on a regularly scheduled basis." (emphasis supplied)

The evidence at the hearings below lead us to believe that the circuit court did not commit error in holding that the position of athletic trainer is extracurricular so as to require a separate contract of employment pursuant to *W.Va.Code*, 18A–4–16 [1982].

The superintendent of Ohio County schools testified that at Wheeling Park, a high school with 1700 students in Ohio County, a full-time athletic trainer is needed. There, the athletic trainer teaches one-half of the regular school day and performs athletic training duties after regular school day hours. At Triadelphia Junior High School, however, because there are only 400–500 students, a full-time athletic

trainer is not needed. The superintendent also submitted a list of documents indicating that, with the exception of one junior high school, all Ohio County secondary schools combine a teaching position with athletic trainer in posting job announcements.

The principal of Triadelphia Junior High School, John Mattern, testified that while some of the athletic trainer's duties take place during regular school day hours, such as tending to injuries occurring at football practice, *most* of the athletic trainer's duties take place *after* regular school day hours.

Owens Brown, a consultant with the West Virginia Education Association, testified that there is much controversy surrounding the duties of an athletic trainer as it pertains to the issue in this case, and that it is treated differently throughout the state.

Mr. Brown also testified about a case in which he was involved in his capacity as a consultant with the West Virginia Education Association. Most of this testimony concerned a situation at another Ohio County school where a science teacher, who also served as an athletic trainer, was allowed to be released from her athletic training duties due to too much stress, but was permitted to continue teaching science, thus, indicating that the duties of an athletic trainer are considered extracurricular.[7]

Based upon the evidence before the circuit court that most of the athletic trainer's duties take place after regularly scheduled hours, we believe that the position of athletic trainer is "extracurricular" for purposes of *W.Va.Code*, 18A–4–16 [1982]. Therefore, a contract to perform athletic training duties should be separate from a regular contract of employment.

---

6. In *Smith v. Board of Education*, 176 W.Va. 65, 341 S.E.2d 685 (1985), we held that actions of a school board which *relate to* contracts entered pursuant to *W.Va.Code*, 18A–4–16 are subject to the procedural requirements set forth in *W.Va. Code*, 18A–2–7 and –8, pertaining to assignments, transfers, promotions, demotions, suspensions, dismissals, etc. *Id.*, syl. pt. 2. *See also* syl. pt. 1, *Hosaflook v. Nestor*, 176 W.Va. 648, 346 S.E.2d 798 (1986).

7. There is also contained in the record an agenda for the Board's May 27, 1986 regular meeting, listing the science teacher as an athletic trainer at Bridge Street Junior High School. This appointment is listed on the agenda under the heading of "Extra–Curricular Appointments."

We do not agree with the Board's position that the duties of an athletic trainer are *not* extracurricular because of Policy No. 5112's requirement that "[a]thletic trainers shall come under the definition of professional educators" as set forth in *W.Va.Code*, 18–1–1 [1980] and *W.Va.Code*, 18A–1–1 [1981].[8]

*W.Va.Code*, 18A–4–16(1) [1982] clearly states that "[e]xtracurricular duties" are "*any* activities that occur at times *other than regularly scheduled working hours* [.]*" (emphasis supplied) This statutory provision goes on to merely "include" a list of activities that are extracurricular. *See supra.* This list is not all-inclusive. Because most of the athletic trainer's duties take place "at times other than regularly scheduled working hours," such duties are clearly extracurricular within the contemplation of the statute.[9]

■ Moreover, *W.Va.Code*, 18A–4–16 [1982] should be strictly construed in favor of the appellee in this case. "School personnel regulations and laws are to be strictly construed in favor of the employee." Syl. pt. 1, *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979).

■ Accordingly, we hold that pursuant to *W.Va.Code*, 18A–4–16 [1982], the duties of an athletic trainer are within the definition of "extracurricular duties," and, therefore, the assignment of a teacher to such duties shall be made only by mutual agreement of the teacher and the superintendent, or designated representative. A teacher's contract of employment shall be separate from an agreement to perform duties as an athletic trainer and such contract shall not be conditioned upon the teacher's acceptance or continuance of such extracurricular assignment as athletic trainer, which has been proposed by the superintendent, a designated representative, or the board of education.

### III

The parties also argue extensively a procedural issue, specifically, the Board's contention that the circuit court committed error by granting the appellee's motion for relief which was made pursuant to Rule 60 of the *West Virginia Rules of Civil Procedure.*[10]

---

**8.** We are aware of the purpose of Policy No. 5112, which provides that "the athletic trainer policy is to provide for the professional development of an individual to function as a state certified athletic trainer to improve the health care of student athletes in the public schools of West Virginia."

This, in our view, is a legitimate purpose. However, contracting the employment of an athletic trainer remains subject to the requirements of *W.Va.Code*, 18A–4–16 [1982].

**9.** We recognize that the position of athletic trainer is, as the circuit court noted in its February 9, 1989 order, a "hybrid situation," as some duties occur during regularly scheduled hours, but most duties occur at times other than regularly scheduled hours. " 'When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed.' Syllabus point 7, *State v. Bragg*, 152 W.Va. 372, 163 S.E.2d 685 (1968)." Syl., *Gant v. Waggy*, 180 W.Va. 481, 377 S.E.2d 473 (1988). Therefore, the duties of an athletic trainer fall within the meaning of "extracurricular duties" pursuant to *W.Va.Code*, 18A–4–16(1) [1982].

**10.** Rule 60(a) provides relief from a judgment or order due to clerical mistakes, such as errors, oversights, and omissions. Rule 60(b) provides:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or

The Board contends that the procedural aspects of this case are governed by Rule 59 of the *West Virginia Rules of Civil Procedure* and not Rule 60. Rule 59 provides that a motion for either a new trial or to alter or amend a judgment "shall be served not later than 10 days after the entry of the judgment." *W.Va.R.C.P.* 59(b) and (e).

Because more than ten days elapsed between the September 23, 1986 order and the appellee's December 8, 1986 motion for relief, the Board maintains that the circuit court was without jurisdiction to entertain such motion pursuant to Rule 60.

The appellee, on the other hand, asserts that the circuit court advised the parties that no factual evidence was necessary because the issue was legal. However, the appellee maintains that despite the "legal nature" of the issue, the circuit court's September 23, 1986 order reflected factual statements allegedly made by counsel for the Board at the August 15, 1986 hearing, which statements obviously supported the Board's position.[11]

Nevertheless, the circuit court granted the appellee's motion for relief pursuant to Rule 60.[12]

In syllabus point 1 of *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446 (1965), this Court held:

> proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearings, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

**11.** The record does not contain a transcript of the August 15, 1986 hearing, and, therefore, we are unable to determine exactly what transpired at such hearing. The Board, however, does not contest the appellee's assertion that the circuit court advised the parties that factual evidence was unnecessary, or that none was presented at the hearing.

The Board does dispute the appellee's assertion that the circuit court only considered the statements made by counsel for the Board. The Board, in opposing the appellee's motion for

The requirement of Rule 59(b) of the Rules of Civil Procedure that a motion for a new trial shall be served not later than ten days after entry of the judgment is mandatory and jurisdictional. The time required for service of such a motion cannot be extended by the court or by the parties.

■ This requirement, however, does not preclude the appellee from seeking relief under Rule 60. In the syllabus of *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 273, 201 S.E.2d 257 (1973), we held: "If a motion for judgment or for a new trial is not timely made under Rule 50(b), R.C.P., or Rule 59(b), R.C.P., a motion may be considered under Rule 60(b) if it states grounds sufficient for relief thereunder."

■ In this case, the circuit court, after entering its first order, conducted further proceedings and entered a second order. The circuit court's second order stated that at a hearing following the first order, "several witnesses brought forth additional, but important facts."

Rule 60(b)(6) allows relief from a final order if there exists "any other reason justifying relief from the operation of the judgment." [13]

We have recognized that Rule 60(b) grants a trial court broad discretion. *Savas v. Savas*, 181 W.Va. 316, 318, 382

relief pursuant to Rule 60, pointed out that the facts relied upon by the circuit court were not supplied by counsel for the Board, but, rather, were facts contained in the state superintendent's decision.

**12.** The circuit court's second order, issued on February 9, 1989, does not set forth its reasons for granting relief under Rule 60.

**13.** Motions pursuant to reasons under (b)(6) of Rule 60 must be made "within a reasonable time," but "not more than eight months after the judgment, order, or proceeding was entered or taken."

"Thus, while eight months is the outer limit, a court may still deny a motion filed within the eight-month period if it was not made within a reasonable time." *Savas v. Savas*, 181 W.Va. 316, 318, 382 S.E.2d 510, 512 (1989).

The appellee's motion for relief was within the outer limit of eight months of the circuit court's first order.

S.E.2d 510, 512 (1989); *Rich v. Rich,* 178 W.Va. 791, 792, 364 S.E.2d 804, 805 (1987).

As to clause (6) of Rule 60(b) of the *Federal Rules of Civil Procedure,*[14] it has been observed:

> While this clause should be liberally applied to accomplish justice, and when a case is properly within clause (6) the [trial] court has a broad legal discretion to grant or deny relief *in light of all the relevant circumstances,* clause (6) is a residual clause to be invoked only on the basis of some reason other than those specified in the preceding clauses (1)–(5).

7 J. Moore & J. Lucas, *Moore's Federal Practice* para. 60.27[2], at 60–273 (1990) (emphasis supplied).

It has also been observed about Rule 60(b)(6) that "[t]his catch-all clause in Rule 60 gives the [trial] court a 'grand reservoir of equitable power to do justice in a particular case.' " *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir.1963) (quoting a previous edition of *Moore's Federal Practice* ).

It is clear to us that the appellee's ground for relief, subsequent to the entering of the first order by the circuit court, is in Rule 60(b)(6). Although the circuit court failed to articulate *specifically* the grounds for relief under Rule 60, apparently it recognized that the interests of justice required conducting further proceedings on the matter. Consequently, the circuit judge conducted such proceedings and subsequently entered an order, holding contrary to the first order. *Cf. Savas v. Savas,* 181 W.Va. 316, 319, 382 S.E.2d 510, 513 (1989), wherein this Court, despite the failure to set forth *specific* grounds of

relief under Rule 60(b), "characterize[d] [the appellant's] motion as relying on that portion of Rule 60(b) which enables a court 'to set aside a judgment for fraud upon the court [, Rule 60(b)(3) ].' "

■ We have repeatedly held that Rule 60(b) of the *West Virginia Rules of Civil Procedure* should be liberally construed. "Inasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction." Syl. pt. 2, *Hamilton Watch Co. v. Atlas Container, Inc.,* 156 W.Va. 52, 190 S.E.2d 779 (1972).

It is often in the context of a default judgment that Rule 60(b) will be liberally construed. *See, e.g., Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. 464, 471, 256 S.E.2d 758, 762 (1979); *Parsons v. McCoy,* 157 W.Va. 183, 191, 202 S.E.2d 632, 637 (1973); *McDaniel v. Romano,* 155 W.Va. 875, 878, 190 S.E.2d 8, 11 (1972).

However, default judgments are not the *only* context in which Rule 60(b) is to be liberally construed. In *Kelly v. Belcher,* 155 W.Va. 757, 187 S.E.2d 617 (1972), a case involving dismissal of plaintiffs from a will contest, this Court held that "Rule 60(b) should be liberally construed to accomplish justice[.]" *Id.* 155 W.Va. at 773, 187 S.E.2d at 626.

It is significant in this case that it was the *circuit court* that did not initially allow the parties to *fully* present evidence in this matter. The circuit court judge was initially of the opinion that receipt of additional evidence was unnecessary because he believed that the issue was solely a question of law.[15]

---

**14.** Rule 60(b)(6) of the *Federal Rules of Civil Procedure* is identical to Rule 60(b)(6) of the *West Virginia Rules of Civil Procedure.* Under Rule 60(b)(6)'s federal counterpart, there is no expressed time limit by which a motion for relief must be made. For clauses (1), (2), and (3) of federal Rule 60(b), an outer limit of one year is imposed, unlike this State's outer limit of eight months for clauses (1), (2), (3), *and* (6).

**15.** We believe that it is important to point out that this is not a situation where a *party* to the case withheld additional evidence, and then at-

tempted to present such evidence after obtaining relief pursuant to Rule 60(b)(6). Rather, the *circuit court* prevented the parties from presenting additional evidence at the initial proceeding. In the former situation, that is, where a *party* withholds certain evidence, a trial court ordinarily would not be inclined to grant relief pursuant to Rule 60(b)(6), although, even in that situation, the trial court's discretion would be broad. In any event, that situation is not before us in this case, but we note it for purposes of clarification.

Accordingly, there was no error in the procedure followed by the circuit court.

Consistent with the foregoing, the February 9, 1989 order of the Circuit Court of Ohio County is affirmed.

Affirmed.