466 S.E.2d 139

**John Mark COPLEY, Plaintiff Below, Appellant,**

v.

**MINGO COUNTY BOARD OF EDUCATION; Edward Keith, President; Ted Warden, June Glover, Lossie Mahone, Tom Brewer, Members; Everett Conn, Superintendent of Schools, Defendants Below, Appellees.**

No. 22877.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Dec. 8, 1995.

482

Jane Moran, Williamson, for Appellant.

Joanna I. Tabit, Jan L. Fox, Steptoe & Johnson, Charleston, for Appellees.

WORKMAN, Justice:

John Mark Copley appeals from a January 20, 1995, order of the Circuit Court of Mingo County granting the Appellee Mingo County Board of Education's (the "Board") motion for judgment on the pleadings. After examining the issues raised, we affirm the lower court's decision concerning Appellant's contractual claim. We find it necessary, however, to remand this case to consider the quantum meruit claim.

Appellant, a teacher and assistant football coach at Williamson High School, was informed by Superintendent of Mingo County Schools, Everett Conn, ("Superintendent Conn") on May 30, 1992, that he had been hired as the Tug Valley High School ("Tug Valley") head basketball coach effective July 1, 1992.[1] In reliance on this announcement, Appellant quit his coaching position at Williamson, thereby forfeiting the $2000 annual stipend for that position. He resigned his position of teaching a class of handicapped students in favor of teaching a single student because of the increased time demands associated with the new coaching position. During the summer of 1992, Appellant conducted various fundraising events upon his own initiative and at his own expense which generated $3500. These funds were turned over to the Tug Valley principal to be used for the purchase of new basketball uniforms. Additionally, Appellant alleges that he conducted two weeks of practice for the Tug Valley basketball team before being notified that he was being replaced as the basketball coach due to a successful grievance initiated by Frank Smith, the former Tug Valley assistant basketball coach.

On October 30, 1992, an opinion was issued by an administrative law judge ("ALJ") in the Smith grievance proceeding which contained a finding that Mr. Smith was more qualified for the basketball coaching position than Appellant and directed that Mr. Smith be instated to the position with backpay. Superintendent Conn admits that Appellant was not informed of the grievance initiated by Mr. Smith until after the ALJ opinion was

---

1. The hiring of Appellant as the Tug Valley basketball coach had been officially approved at the May 26, 1992, meeting of the Mingo County Board of Education and published in the local newspaper, the *Williamson Daily News*, on May 27, 1992.

issued.[2] The record reflects that Appellant was advised by Superintendent Conn, Board member June Glover, and Grievant Smith regarding the findings of the ALJ.[3]

The Board voted not to appeal the ALJ decision. Appellant did appeal[4] the decision, but by order dated May 3, 1994, the Circuit Court of Mingo County upheld the ALJ decision and dismissed the appeal with prejudice. On February 10, 1994, Appellant filed a complaint against the Board, alleging breach of an oral contract of employment. Through this lawsuit Appellant sought damages in the amount of $8500[5] on grounds of detrimental reliance and unjust enrichment. In answer to the complaint filed against it, the Board averred that no enforceable contract existed between it and Appellant. The Board based its position on the statutory provision concerning extracurricular assignments which requires that "[t]he terms and conditions of the agreement between the employee and the board of education shall be in writing and signed by both parties." W.Va.Code § 18A–4–16(3) (Supp.1995).

In reliance on the written contract provision of West Virginia Code § 18A–4–16(3), the Board filed a motion for judgment on the pleadings on July 28, 1994. Before this motion was argued, the depositions of Superintendent Conn and Board member June Glover were taken.[6] On September 6, 1994, the motion for judgment on the pleadings was argued. The court granted the Board's motion, but also granted Appellant's motion to amend his complaint.[7]

Upon the filing of the amended complaint,[8] the Board filed a second motion for judgment on the pleadings and a hearing was held on this motion on November 28, 1994. The court refused Appellant's request to consider "any evidence" produced during discovery, and granted the motion for judgment by order dated January 20, 1995.

Appellant argues that he was wrongly denied the opportunity to present evidence at the hearing on the Board's second motion for judgment on the pleadings. Additionally, he contends that the court did consider evidence during the first motion for judgment which

---

**2.** In defense of its failure to notify Appellant of the Smith grievance, the Board relies upon the confidentiality requirement of West Virginia Code § 18–29–3(m) (1994). That provision states that "all conferences and hearings pursuant to this article shall be conducted in private except that, upon the grievant's request, conferences and hearings at levels two and three shall be public. Within the discretion of the hearing examiner, conferences and hearings may be public at level four." Id. During the course of these proceedings, an amendment to West Virginia Code § 18–29–3 was enacted which now permits intervention by an affected employee. See infra note 4 (discussing W.Va.Code § 18–29–3(u) (effective 1992)).

**3.** The Board contends that Appellant did in fact know at an earlier time that the grievance had been initiated by Mr. Smith, suggesting that the two individuals were in contact with each other during the various stages of the grievance proceedings.

**4.** While the record is unclear regarding the procedural method employed by Appellant to appeal the grievance decision involving Mr. Smith, he was entitled, under a newly enacted provision of West Virginia Code § 18–23–3 to "intervene and become a party to a grievance at any level when that employee claims that the disposition of the action may substantially and adversely [sic] affect his or her rights or property and that his or

her interest is not adequately represented by the existing parties." W.Va.Code § 18–23–3(u) (effective 1992). Although the Board was apparently unaware of the fact, Appellant did appeal the grievance decision to the Circuit Court of Mingo County.

**5.** According to Appellant, the $8500 in damages sought is comprised of the following: $3500 for the funds raised and turned over to Tug Valley for uniforms; $2000 for the stipend he would have received had he remained in his prior coaching position; $1500 for hours spent preparing for the 1992–93 basketball season and the two weeks practice he conducted; $250 for personal funds he expended in connection with raising the uniform money; and $1000 for pain and emotional distress.

**6.** The Board filed a motion to stay discovery in an attempt to prevent these depositions from proceeding, but the motion was never heard because the judge was on vacation.

**7.** The motion to amend the complaint was filed on August 28, 1994.

**8.** The amended complaint contains additional language regarding Appellant's reliance upon the Board's representations, but does not substantially differ from the original complaint.

transformed such proceeding into a summary judgment motion.

\* \* \*

Motions for judgment on the pleadings are governed by Rule 12(c) of the West Virginia Rules of Civil Procedure. Rule 12(c) provides that

> [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W.Va.R.Civ.P. 12(c). We recognized in *Calvert Fire Insurance Co. v. Bauer*, 175 W.Va. 286, 332 S.E.2d 586 (1985), that "[c]ourts generally adhere to a rather restrictive standard in ruling on motions for judgment on the pleadings under Rule 12(c)." 175 W.Va. at 287, 332 S.E.2d at 588.

■■■ Our review of a circuit court's order granting a motion for judgment on the pleadings is de novo. A motion for judgment on the pleadings presents a challenge to the legal effect of given facts rather than on proof of the facts themselves. In this respect it is essentially a delayed demurrer or a motion to dismiss. Consistent with modern procedure, the West Virginia Rules of Civil Procedure approach the motion essentially as a motion to dismiss for failure to state a claim in that the motion will not be granted except when it is apparent that the deficiency could not be cured by an amendment. *See*

*Lanasa Fruit Steamship & Importing Co. v. Universal Ins. Co.*, 302 U.S. 556, 559, 58 S.Ct. 371, 372, 82 L.Ed. 422, 424 (1938); *see also* Korn and Paley, *Survey of Summary Judgment, Judgment on the Pleadings and Related Pre-trial Procedures*, 42 Cornell L.Q. 483 (1957).[9] We recently stated the standard for determining a motion to dismiss in *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995):

> The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief.'

*Id.* at 776, 461 S.E.2d at 522 (citations omitted). We extend that ruling to motions for judgment on the pleadings by holding that a circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant a motion for judgment on the pleadings only if it appears beyond doubt that the nonmoving party can prove no set of facts in support of his or her claim or defense. To the extent that this is inconsistent with our ruling in *Calvert Fire Insurance Co.*, we hereby overrule that decision.

Applying these principles to the instant case, we initially examine whether Appellant could prove any facts justifying the relief he sought in the complaint. Both parties concede that a written contract was never executed with regard to Appellant's hiring by the Board as the Tug Valley head basketball coach. The statute at issue is phrased in mandatory terms—"the terms and conditions of the agreement ... *shall* be in writing and

---

9. Although some cases inartfully have suggested that the standard governing motions for judgment on the pleadings "is essentially the same as that for granting a motion to summary judgment," *Calvert Fire Insurance Co. v. Bauer*, 175 W.Va. 286, 287–88, 332 S.E.2d 586, 588 (citing, inter alia, *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.1973); *General Cinema Corp. v. Buena Vista Distrib. Co.*, 681 F.2d 594, 597 (9th Cir.1982)), it is well-settled that the summary judgment standard applies only when the court considers information extrinsic to the pleadings. Thus, the West Virginia Rules of Civil Procedure retain the

motion for judgment on the pleadings but expand its usefulness by allowing it to "speak," that is supported by affidavits and other evidentiary material. It is only then that the motion on the pleadings is transformed into a motion for a summary judgment. This is what was done in *Calvert Fire Insurance Co.* ("While the trial court in this case purported to act on the basis of granting a motion for judgment on the pleadings, we believe, however, that the motion was converted into a motion for summary judgment under Rule 56."). 175 W.Va. at 288, 332 S.E.2d at 588.

signed by both parties." W.Va.Code § 18A–4–16(3) (emphasis supplied); *see Marion County Bd. of Educ. v. Bonfantino*, 179 W.Va. 202, 204, n. 6, 366 S.E.2d 650, 652, n. 6 (1988) (recognizing that under usual rules of statutory construction, word "shall" connotes mandatory rather than discretionary actions). We too determine that there were no provable facts justifying relief and, therefore, that a judgment on the pleadings was appropriate. Unlike the circuit court, however, we conclude that the lack of a written contract is not dispositive of the issue presented here, and was not the proper basis for granting the motion. In other words, the circuit court did the correct thing (at least partially) for the wrong reason. We have previously stated that a correct ruling rendered on an erroneous ground may be affirmed. *See* Syl. Pt. 3. *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965) (stating that lower court's judgment may be affirmed "when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment").

■ The statutes requiring written contracts[10] have among their chief purposes both the sound administration of the schools and the rights of both school systems and teachers to the protection of a written contract.[11] It is generally the duty of a board of education to prepare the written contract.[12] In circumstances such as these, where a contract has been formally approved and publicly announced, the failure of the board to prepare and have executed a written contract pursuant to its ministerial duty cannot be raised as a defense to a breach of contract claim. Clearly, the Board and Appellant had

entered into an oral contract, even though the Board had not yet presented a written contract for Appellant's signature when the grievance decision was filed.

■ The better defense, and the one that should have been put forth by the Board, was that a board of education is not free to ignore a grievance decision, even if a contract has been entered into with one whose rights under the contract are altered by the grievance decision. West Virginia Code § 18–29–7 (1994) provides that "[t]he decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court." Thus, the Board did not have the option of disregarding the grievance decision. A board of education that in good faith hires an individual is not subject to civil action for damages for breach of contract by that person when it is thereafter determined as a result of the grievance process established by West Virginia Code §§ 18–29–1 to –11 (1994 & Supp.1995) that another individual should have been placed in that position.

■ We observe that Appellant would not be in a better position on this issue even if he had a written contract with the Board. Notwithstanding an executed contract between the Board and Appellant, the Board would still have been required to place Mr. Smith in the position of Tug Valley head basketball coach, since he prevailed in the grievance process. Because a Board is bound to accept the findings issued in connection with a grievance proceeding, excepting its right of appeal,[13] the existence of a written contract would not alter the result here.[14] We conclude, therefore, that the cir-

---

10. West Virginia Code § 18A–2–2(1993) also requires a written contract for all teachers.

11. Similarly, the stated legislative purpose of the grievance procedure in West Virginia Code § 18–29–1 to –11 (1994 & Supp.1995) is to provide a procedure for employers and employees in the state and county educational systems "to reach solutions to problems which arise between them within the scope of their respective employment relationships to the end that good morale may be maintained, effective job performance may be enhanced and the citizens of the community may be better served." W.Va.Code § 18–29–1.

12. W.Va.Code 18A–2–2 provides that contracts for teachers shall be in the form prescribed by the state superintendent of schools.

13. *See* W.Va.Code § 18–29–7.

14. If Appellant's position is that the Board breached its contract with him by failing to appeal the ALJ decision, this too fails to constitute the basis for a breach of contract claim. A board of education has the discretion to determine under all the circumstances of a given case and with due regard for the necessary expenditure of resources and the chances of success whether to appeal an ALJ decision. Moreover, a teacher

cuit court's finding that Appellant had no breach of contract claim against the Board was correct because the Board was required to follow the grievance decision.

This case illustrates the confusion that can result from a board's failure to promptly reduce to writing the terms of an employment contract.[15] As we recognized in *State ex rel. Hawkins v. Tyler County Bd. of Educ.*, 166 W.Va. 363, 275 S.E.2d 908 (1980), "[o]nly in this manner [execution of a separate contract] can both teachers and county boards of education be protected from the unreasonable demands and arbitrary conduct that naturally arise from informal or 'unofficial' agreements as to the duties to be performed by teachers in or out of the classroom." *Id.* at 374, 275 S.E.2d at 916. Similarly, in *Cruciotti v. McNeel*, 183 W.Va. 424, 396 S.E.2d 191 (1990), we required that "the assignment of a teacher to such [extracurricular] duties shall be made by mutual agreement of the teacher and the superintendent, or designated representative." *Id.* at 428, 396 S.E.2d at 195. Clearly, had a contract been prepared as required by West Virginia Code § 18A–4–16, much of the dispute concerning when basketball practices could and could not be held as well as what was properly part of Appellant's responsibilities as basketball coach could have been avoided.

 While judgment on the pleadings with regard to Appellant's breach of contract claim was partially correct, the issue of whether Appellant should be compensated for any services performed under his contract[16] prior to the grievance decision remains. Appellant's quantum meruit[17] claim includes the allegation that he conducted basketball practices for Tug Valley for two weeks prior to the time he was relieved of his coaching duties. According to the Board's responsive averments, the Secondary Schools Activities Commission Rules and Regulations did not sanction practices for boys basketball for the 1992–93 season until November 16, 1992. If, in fact, state regulations precluded boys basketball from practicing during the time period for which Appellant seeks remuneration for conducting practices, the lack of a compensable claim is suggested unless the contract would have provided otherwise. However, because no evidence was taken on this issue, we must remand this matter to the circuit court for further inquiry into the validity of this claim. On remand, the circuit court should hear evidence on when the contract period was to have begun absent its interruption by the grievance decision. If the evidence on remand indicates that Appellant performed any duties subsequent to the beginning of the contract period which would ordinarily be covered by the type of extracurricular contract that was not executed in this case, he would be entitled to compensation for such services.

 The $3500 which Appellant raised for new uniforms is not subject to quantum meruit consideration because, by definition, such a claim requires as an element of recovery that the services at issue were performed under such circumstances by the individual seeking recovery that he reasonably expected

affected by a grievance proceeding is now permitted to intervene in the proceeding pursuant to West Virginia Code § 18–29–3(u). This right to intervene includes the right of appeal pursuant to West Virginia Code § 18–29–7.

15. According to Appellee's brief, the Appellant's hiring as the Tug Valley basketball coach was effective July 1, 1992, and the grievance decision was issued on October 30, 1992. There is no indication in the record of this case what the contract period would have been.

16. Even though the written contract was never executed, the circuit court on remand may take evidence and consider the typical written contract utilized by the Board with reference to extracurricular assignments.

17. The principle underlying quantum meruit recovery "is a contract implied in law ... based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." *Associated Wrecking and Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co.*, 228 Neb. 764, 424 N.W.2d 343, 348 (1988). "If 'benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving and retaining the benefits to pay their reasonable value.'" *Id.* (quoting *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216, 219 (1987)).

to be paid for such services by the person sought to be charged. *See Montes v. Naismith & Trevino Const. Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App.1970); *see also Gibson v. McCraw*, 175 W.Va. 256, 261, 332 S.E.2d 269, 274 (1985) (quoting Syl. Pt. 4, *Hurst's Adm'r v. Hite*, 20 W.Va. 183 (1882)). We do not believe that Appellant, during the time that he was raising money for the new uniforms, had any reasonable expectation of receiving remuneration for his services in connection with the fund-raising activities and accordingly, his efforts in this regard would not properly form the basis of a quantum meruit claim.

■ Finally, we address the issue of whether the circuit court improperly relied upon evidence outside the pleadings in connection with its initial granting of judgment on the pleadings. During the hearing on the first motion for judgment on the pleadings, Appellant claims to have put into evidence the deposition of Superintendent Conn.[18] Appellant argues that the motion for judgment on the pleadings was automatically transformed into a summary judgment motion by virtue of references the court made to information presented from the Conn deposition. The specific reference was to the alleged practice of the Board of routinely failing to comply with the written contract requirement contained in West Virginia Code § 18A-4-16(3).[19]

This Court in *Gunn v. Hope Gas, Inc.*, 184 W.Va. 600, 402 S.E.2d 505 (1991), ruled that a trial "court's consideration of documents which supported the pleadings converted the defendant's Rule 12(c) motion into a Rule 56 motion for summary judgment." *Id.* at 603, 402 S.E.2d at 508. Unlike the issue being considered in *Gunn*—the fulfillment of contractual obligations—the issue before the trial court in the instant case was simply one of

statutory compliance. That is, the only issue considered and resolved by the circuit court below was whether the absence of a written contract precluded Appellant from maintaining a contractual claim against the Board. The court likened the issue before it to a statutory frauds claim. Importantly, no evidence was presented regarding the lack of a written contract, as that was not in dispute. The transcript makes patently clear that the court relied on nothing but the statutory requirement imposed by West Virginia Code § 18A-4-16(3) in making its ruling—a pure legal ruling made without reference to any disputed facts. Thus, to conclude that the deposition testimony referred to by Appellant was "considered" by the trial court in making its ruling would require quite a stretch. More importantly, however, the facts are undisputed.

Because we conclude that the lower court need not have considered the deposition testimony in connection with making its first ruling granting judgment on the pleadings, the Board's motion was not transformed into a summary judgment motion. *Cf. Gunn*, 184 W.Va. at 603, 402 S.E.2d at 508. At the hearing on the Board's second motion for judgment on the pleadings, the trial court clearly did not permit any evidence produced during discovery to be introduced, nor did the court refer to any evidence in making its ruling. Because the Board's motion was not altered into a summary judgment motion, Appellant was not wrongly denied the opportunity to present evidence at the November 28, 1994, hearing.

Based on the foregoing we affirm, in part, and reverse, in part, the decision of the Circuit Court of Mingo County and we remand this case for further proceedings consistent with this opinion.

---

18. Although the record supports Appellant's position that he stated an intention to introduce into evidence the deposition of Superintendent Conn at the September 6, 1994, hearing, the transcript from this proceeding does not indicate that Appellant actually moved for the introduction of the deposition. We note, however, that the deposition transcript is included as a part of the record of this case.

19. During the September 6, 1994, hearing, the court stated:
 The troubling part of this is that there is some evidence here that indicates that the Board of Education routinely does not comply with the statute, particularly with regard to the football coaches. In fact, football season is over before they actually make written contracts. I don't know what effect that is going to have on the statutory requirement.

Affirmed in part; Reversed in part; and Remanded with instructions.