498 S.E.2d 41

Charles K. BLAKE, Sr., and Adelia A. Blake, Plaintiffs Below, Appellants,

v.

CHARLESTON AREA MEDICAL CENTER, INC., a Corporation, Defendant Below, Appellee.

No. 24132.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Nov. 25, 1997.

W. Dale Greene, Charleston, for Appellants.

Kevin A. Nelson, Jonathon Nicol, Crystal S. Stump, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellee.

DAVIS, Justice:

The plaintiffs below and appellants herein, Charles K. Blake, Sr., and Adelia A. Blake, appeal from an order entered June 17, 1996, by the Circuit Court of Kanawha County. Ruling in favor of the defendant below and appellee herein, Charleston Area Medical Center, Inc., the circuit court dismissed the plaintiffs' claims of fraud and misrepresentation against the defendant, finding that an

earlier lawsuit between the parties barred the plaintiffs' present suit on *res judicata* grounds. Upon a review of the parties' arguments, the record before us, and the relevant authorities, we disagree with the rationale of the circuit court and find that dismissal of the plaintiffs' claims was improper. Accordingly, we reverse the lower court's judgment and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On, or about, April 26, 1991, Adelia A. Blake underwent extensive heart bypass surgery at Charleston Area Medical Center [hereinafter CAMC]. At the time of her hospitalization, Mrs. Blake had medical insurance coverage through Mountain State Blue Cross and Blue Shield, Inc. [hereinafter Blue Cross]. Upon the completion of her medical treatment, Mrs. Blake had incurred hospital expenses of approximately $35,000. It appears from the record that while Blue Cross reimbursed CAMC for a substantial portion of these expenses, Mrs. Blake's account at CAMC nevertheless reflected an amount due and owing of $3,092.10. When Mrs. Blake and her husband, Charles K. Blake, Sr. [hereinafter collectively referred to as the Blakes], failed to satisfy this bill, CAMC, on August 29, 1992, filed an action against them in the Circuit Court of Kanawha County [hereinafter "Suit 1"].

Believing that they owed the sum sought by CAMC, the Blakes did not challenge CAMC's actions in filing "Suit 1" or otherwise appear to defend that action.[1] In due course, CAMC, acknowledging the Blakes' failure to answer or otherwise appear, sought a default judgment. By order entered January 13, 1993, the Circuit Court of Kanawha County granted the requested relief and, in the default judgment order, adjudged that the Blakes owed to CAMC $3,585.99, the amount of the original shortage in payment plus pre-judgment interest, as determined by

---

**1.** The record does not indicate whether the Blakes were represented by counsel at, or around, the time of the filing of "Suit 1".

the court, from May 27, 1991, to December 30, 1992.[2] The Blakes indicate that CAMC then executed the default judgment and attempted to complete its recovery by garnishing and otherwise attaching Mr. Blake's wages, beginning in, or around, February, 1993.

Subsequently, the Blakes began to question whether they, in fact, owed the monies claimed by CAMC. In September, 1993, Mrs. Blake learned from Blue Cross that there was an agreement between Blue Cross and CAMC whereby CAMC would accept, as payment in full, amounts paid by Blue Cross on behalf of its insureds. In November, 1993, the Blakes received a copy of this agreement from Blue Cross.[3]

Thereafter, on January 23, 1995, the Blakes filed a civil action against CAMC in the Circuit Court of Kanawha County [hereinafter "Suit 2"]. The complaint alleged that CAMC acted "falsely and fraudulently" in failing to disclose its agreement with Blue Cross and in attempting to recover, from the Blakes, the remainder of Mrs. Blake's hospital expenses. CAMC responded and asserted that the Blakes were precluded from bringing their lawsuit because "Suit 2" was barred, on *res judicata* grounds, by the prior resolution of "Suit 1". Accordingly, CAMC moved to dismiss, on the pleadings, "Suit 2". Following a hearing on this matter, the circuit court, by letter to the parties dated May 17, 1996, found:

> [t]he defendant in the instant case argues that the plaintiffs' lawsuit is precluded by the doctrine of *res judicata*. After a careful review of the relevant case law, this Court finds that the Blakes were (without dispute) given notice of the earlier lawsuit, and failed to answer. As a result, default

judgment was entered. This resulted in a judgment on the merits. Both lawsuits involve the same parties, and thus, there is identity of the parties. Lastly, the initial lawsuit was for an unpaid medical bill, and the instant lawsuit is for damages as a result of "overcharge" for the same unpaid medical bill. This Court finds there is identity of the cause of action since these issues of "overcharge" could have been adjudicated in the earlier lawsuit. The status of the earlier lawsuit was such that the "overcharge" issues "might have been disposed of on the merits."

> Therefore, although harsh in its results under the circumstances of this case, the Court finds this suit is barred by the applicability of the doctrine of *res judicata*, and therefore, grants the motion to dismiss[.]

By order entered June 17, 1996, the circuit court formally rendered the above-described decision granting CAMC's motion to dismiss. In the circuit court's final "Order Granting Defendant's Motion to Dismiss," the court noted that CAMC had moved to dismiss "Suit 2" pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure[4] and acknowledged its consideration of the doctrine of *res judicata*. It is from this final order of the circuit court that the Blakes appeal to this Court.

## II.

## DISCUSSION

On appeal to this Court, the Blakes assert that the circuit court improperly disposed of their lawsuit by way of a dismissal on the pleadings when, given the court's consideration of matters outside of the pleadings,

2. The circuit court calculated pre-judgment interest from thirty days after the last date on which CAMC rendered services to Mrs. Blake (May 27, 1991) to the date on which CAMC requested relief by default judgment (December 30, 1992).

3. It appears from the record that the effective date of this contract was March 4, 1991, indicating that this agreement was in place prior to Mrs. Blake's surgery and accompanying medical treatment. Given the sparse factual development of the record before us, though, we are unable to determine precisely to which group of patient

insureds Mrs. Blake belonged, and thus, we cannot determine the specific percentage of hospitalization benefits Blue Cross paid to CAMC on her behalf (92%, 93%, or 100% of the expenses actually incurred).

4. The Blakes contend that the circuit court, in granting CAMC's motion to dismiss, erroneously considered matters outside the pleadings, thereby effectively transforming CAMC's motion to dismiss, on the pleadings, into a motion for summary judgment. We will further address this contention in Section II.A., *infra*.

disposition through summary judgment would have been more appropriate. The Blakes contend further that the circuit court improperly dismissed their claims of fraud and misrepresentation against CAMC on the basis of *res judicata.* First, we will discuss the proper standard of review. Then, we will address the merits of the parties' contentions.

### A. Standard of Review

Generally, when determining the propriety of a circuit court's ruling, we employ a multifaceted standard of review. " 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*' Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997). *See also Clark v. Kawasaki Motors Corp., U.S.A.,* 200 W.Va. 763, 766, 490 S.E.2d 852, 855 (1997) (same); Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997) (same).

With respect to the instant appeal, the procedural posture of the case indicates that it has been appealed to this Court following a judgment on the pleadings. Both CAMC and the circuit court adopt this characterization of the case's prior disposition. Rule 12(c) of the West Virginia Rules of Civil Procedure allows, in part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Tailoring our general standard of review to the specific review of a judgment on the pleadings, we have held that "[a]ppellate review of a circuit court's order granting a motion for judgment on the pleadings is de novo." Syl. pt. 1, *Copley v. Mingo County Bd. of Educ.,* 195 W.Va. 480, 466 S.E.2d 139 (1995). Explaining the reasoning for this standard, we stated that "[a] motion for judgment on the pleadings presents a challenge to the legal effect of given facts rather than on proof of the facts themselves." Syl. pt. 2, in part, *Copley, id.* For this reason,

> [a] circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant a motion for judgment on the pleadings only if it appears beyond doubt that the nonmoving party can prove no set of facts in support of his or her claim or defense.

Syl. pt. 3, *Copley, id.*

Despite the facial appearance of the lower court's disposition of this case as a judgment on the pleadings, the Blakes contend that, because the circuit court referred to and relied upon matters outside of the pleadings in rendering its decision, the motion for judgment on the pleadings was, in fact, converted to one for summary judgment. In this manner, the Blakes point to the circuit court's acknowledgment in its letter of decision that it had "reviewed the Motion to Dismiss, the Response, the memoranda, as well as the submissions made after the hearing in this matter." Accordingly, the Blakes urge that we review this case as we would an appeal arising from a summary judgment disposition.

Rule 12(c) of the West Virginia Rules of Civil Procedure specifically provides for this particular scenario:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Thus, a court's consideration of material extraneous to the pleadings could, in fact, result in the conversion of a motion for judgment on the pleadings into a motion for summary judgment. *See, e.g., Kopelman & Assoc., L.C. v. Collins,* 196 W.Va. 489, 495, 473 S.E.2d 910, 916 (1996) ("Due to the fact the circuit court considered matters outside the pleadings, we must review the record *de novo* under summary judgment standards."); *Gunn v. Hope Gas, Inc.,* 184 W.Va. 600, 603, 402 S.E.2d 505, 508 (1991) (per curiam) (not-

ing that "the [circuit] court's consideration of documents which supported the pleadings converted the defendant's Rule 12(c) motion into a Rule 56 motion for summary judgment"). Accordingly, "[w]hen a motion for judgment on the pleadings under Rule 12(c) of the West Virginia Rules of Civil Procedure is converted into a motion for summary judgment, the requirements of Rule 56 of the West Virginia Rules of Civil Procedure become operable." Syl. pt. 1, in part, *Kopelman & Assoc., L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910.

■ Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." As with an order granting a motion for judgment on the pleadings, we review *de novo* a circuit court order granting summary judgment: " '[a] circuit court's entry of summary judgment is reviewed *de novo.*' Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995). In determining whether the circuit court properly granted summary judgment, we have stated that:

> " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. pt. 2, *Miller v. Whitworth,* 193 W.Va. 262, 455 S.E.2d 821 (1995).

Syl. pt. 2, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532. Likewise, " ' "[s]ummary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.' " ' " *Bailey v. Kentucky Nat'l Ins. Co.,* 201 W.Va. 220, 225, 496 S.E.2d 170, 175 (1997) (quoting *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 710–711, 487 S.E.2d 901, 905–906 (1997) (quoting *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (quoting *Pierce v.*

*Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir. 1951))))).

[7] Thus, it appears from our discussion of the various applicable standards of review that, regardless of the precise characterization of the circuit court's disposition of this matter, the standard of review is virtually the same be it an appeal from a judgment on the pleadings or an appeal of a summary judgment order. That is, the appropriate standard of review is *de novo.* When employing the *de novo* standard of review, we review anew the findings and conclusions of the circuit court, affording no deference to the lower court's ruling. *See West Virginia Div. of Envtl. Protection v. Kingwood Coal Co.,* 200 W.Va. 734, 745, 490 S.E.2d 823, 834 (1997) (" 'De novo refers to a plenary form of review that affords no deference to the previous decisionmaker.' " (quoting *Fall River County v. South Dakota Dep't of Revenue,* 1996 SD 106, ¶ 14, 552 N.W.2d 620, 624 (1996) (citations omitted))). *See also West Virginia Div. of Envtl. Protection v. Kingwood Coal Co.,* 200 W.Va. at 745, 490 S.E.2d at 834 ("The term '*de novo* ' means ' "[a]new; afresh; a second time." ' " (quoting *Frymier–Halloran v. Paige,* 193 W.Va. 687, 693, 458 S.E.2d 780, 786 (1995) (quoting Black's Law Dictionary 435 (6th ed. 1990)))).

■ We turn now to the Blakes' contentions that the circuit court erroneously characterized its decision of this case as a judgment on the pleadings when, in fact, the court's consideration of additional matter converted it into a summary judgment. We agree with the Blakes and find that the circuit court's determination of this case resulted in a summary disposition. " 'We are not bound by the label employed below, and we will treat the dismissal as one made pursuant to' the most appropriate rule." *Kopelman,* 196 W.Va. at 494 n. 6, 473 S.E.2d at 915 n. 6 (quoting *Murphy v. Smallridge,* 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996)). The record before us indicates that the circuit judge did, in fact, consider matters outside of the pleadings in rendering her decision in this matter. Nonetheless, because our standard of review of either a judgment on the pleadings or a summary judgment is virtually identical, and because,

as discussed below, we find this case was not ripe for summary disposition, we do not find that the Blakes were harmed by this misnomer.

### B. Applicability of Res Judicata

The Blakes argue that the circuit court improperly dismissed their claims of fraud and misrepresentation against CAMC on the basis of *res judicata*. During the proceedings below, CAMC moved for judgment on the pleadings, and, following a hearing, the circuit court granted the same.[5] Before this Court, the Blakes contend that dismissal of their claims on the basis of *res judicata* was erroneous because their lawsuit and the suit earlier filed by CAMC, though involving the same parties, did not involve the same cause of action.

 Broadly phrased, *res judicata* refers to " 'claim preclusion.' " *Sattler v. Bailey*, 184 W.Va. 212, 217, 400 S.E.2d 220, 225 (1990). We similarly have described *res judicata*, in general terms, as "preclud[ing] relitigation of the same cause of action." *Christian v. Sizemore*, 185 W.Va. 409, 412, 407 S.E.2d 715, 718 (1991). In this manner, " '[u]nder the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.' " *Porter v. McPherson*, 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (1996) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552, 559 n. 5 (1979)) (footnote omitted). *See also Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 220 (1983) (noting that "the central inquiry on a plea of *res judicata* is whether the cause of action in the second suit is the same as in the first suit"); *Hannah v. Beasley*, 132 W.Va. 814, 821–22, 53 S.E.2d 729, 733 (1949) (" 'A cause of action between persons who were parties to a former adjudication, set up in a subsequent action between them, is not *res judicata* by the former decision, unless it is identical with the one actually or constructively heard and determined in the former suit.' " (quoting

Syl. pt. 1, *Lutz v. Williams*, 84 W.Va. 216, 99 S.E. 440 (1919))).

 The rationale underlying the preclusive effect of *res judicata* is to avoid "the expense and vexation attending relitigation of causes of action which have been fully and fairly decided." *Sattler v. Bailey*, 184 W.Va. at 217, 400 S.E.2d at 225. Stated simply otherwise, "a man should not be twice vexed for the same cause." *Hannah v. Beasley*, 132 W.Va. at 821, 53 S.E.2d at 732 (internal quotations and citation omitted). Thus, we have announced:

> "[f]or a second action to be a second vexation which the law will forbid, the two actions must have (1) substantially the same parties who sue and defend in each case in the same respective character, (2) the same cause of action, and (3) the same object."

*Id.*, 132 W.Va. at 821, 53 S.E.2d at 733 (quoting Syl. pt. 1, *State ex rel. Connellsville By–Product Coal Co. v. Continental Coal Co.*, 117 W.Va. 447, 186 S.E. 119 (1936)). We further have explained, with specific respect to the identity of the two causes of action:

> [f]or purposes of res judicata, "a cause of action" is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. . . . The test to determine if the . . . cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. . . . If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata.

*White v. SWCC*, 164 W.Va. 284, 290, 262 S.E.2d 752, 756 (1980) (citations omitted).

 More explicitly, the requirements of the doctrine of *res judicata* contemplate:

> " '[a]n adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as

---

**5.** However, as noted in the preceding section, we will treat this case as an appeal from an order of summary judgment.

to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*' Point 1, Syllabus, *Sayre's Adm'r v. Harpold* [sic], 33 W.Va. 553[, 11 S.E. 16 (1890) ]." Syllabus Point 1, *In re Estate of McIntosh,* 144 W.Va. 583, 109 S.E.2d 153 (1959).

Syl. pt. 1, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (emphasis in original). Thus, *res judicata* may operate to bar a subsequent proceeding even if the precise cause of action involved was not actually litigated in the former proceeding so long as the claim could have been raised and determined.

 It should be noted, however, that an exception to the preclusion of claims that previously could have been determined exists where the party bringing the subsequent lawsuit claims that fraud, mistake, concealment, or misrepresentation by the defendant of the second suit prevented the subsequent plaintiff from earlier discovering or litigating his/her claims. *See* Restatement (Second) of Judgments § 26 cmt. j (1982); 8B Michie's Jurisprudence *Former Adjudication or Res Judicata* § 49 n. 2 (1994). *See also Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir. 1986) (recognizing exception, but finding it inapplicable to facts of *Harnett* ). This is so because

> [a] defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud....
>
> The result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action.

Restatement (Second) of Judgments § 26 cmt. j. Nevertheless, in assessing whether the claim at issue could have been litigated,

" 'the essential question becomes whether the claims asserted by the [plaintiff] in the present and prior actions are closely enough related to justify the conclusion that the defendant should have foreseen the consequences in the present action of his failure to litigate his defenses in the prior action.' " *Matter of Townview Nursing Home,* 28 B.R. 431, 445 (Bankr.S.D.N.Y.1983) (quoting *United States v. Martin,* 395 F.Supp. 954, 959 (S.D.N.Y. 1975)) (citation omitted).

 Thus, the above-cited authorities indicate that three essential elements must exist to preclude the litigation of a subsequent action on *res judicata* grounds. Accordingly, consolidating and reiterating these authorities, we hold that before the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

 With respect to the third and final element, for the purposes of applying the doctrine of *res judicata,* it is imperative that the party bringing the subsequent lawsuit was, during the prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action. Thus, where a plaintiff bringing a subsequent lawsuit was not able to discover or otherwise ascertain his/her claim until after the final adjudication of the prior action, his/her subsequent suit may not automatically be precluded on the basis of *res judicata.* As we noted above, a limited exclusion to the doctrine of *res judicata* exists in those cases in which a defendant's fraud or misrepresentation has prevented a plaintiff from discovering the existence of his/her claims until after the conclusion of the prior action. Accordingly, the circuit court should very carefully evaluate the claims raised by

the plaintiff in the subsequent proceeding and scrutinize the plaintiff's reasons as to why he/she was unable to earlier discover the nature of his/her claim during the course of the prior action when determining whether *res judicata* operates to bar the subsequent lawsuit. Notwithstanding this scrupulous assessment of the applicability of *res judicata* to a particular case, we reiterate our prior admonishment that, even though the requirements of *res judicata* may be satisfied, we do "not rigidly enforce [this doctrine] where to do so would plainly defeat the ends of Justice." *Gentry v. Farruggia*, 132 W.Va. 809, 811, 53 S.E.2d 741, 742 (1949). *See also White v. SWCC*, 164 W.Va. at 291, 262 S.E.2d at 757 (same).

 Applying these elements to the case *sub judice*, we find that the doctrine of *res judicata* does not preclude litigation of the claims raised by the Blakes in their lawsuit against CAMC.[6] It is true that the default ruling in the initial case between CAMC and the Blakes satisfies the criteria for a final adjudication on the merits by a court of competent jurisdiction. *See Christian v. Sizemore*, 185 W.Va. at 412, 407 S.E.2d at 718 (recognizing that "a default judgment may in certain circumstances preclude a second suit based upon the same cause of action under res judicata"); 11A Michie's Jurisprudence *Judgments and Decrees* § 200 (1997) (noting that "[a] default judgment is final" (citing *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970))); 8B Michie's Jurisprudence *Former Adjudication or Res Judicata* § 60 (1994) (indicating that a default judgment is final and presents the same conclusive effect as if the judgment had been rendered following a trial on the merits). Furthermore, both "Suit 1" and "Suit 2" involve the same parties: CAMC and Mr. and Mrs. Blake. Regardless of the satisfaction of the first two elements of the applicability of *res judicata*, the third element, identity of the cause of

action, is not present in the instant proceedings.

In "Suit 1", CAMC sought to collect upon a debt it alleged was owed to it by the Blakes. While "Suit 2" also involves the same underlying debt asserted by CAMC, the Blakes do not seek simple repayment of these funds. Rather, the Blakes allege that CAMC acted fraudulently in claiming entitlement to repayment by the Blakes; misrepresented information pertaining to its right to collect this purported debt; and wrongfully enforced its judgment on the same. The Blakes allege further that the fraudulent conduct and misrepresentations perpetrated by CAMC hindered their discovery of the contractual relationship between CAMC and Blue Cross and prevented them from knowing that they did not owe the debt claimed until long after the default judgment had been entered against them. Thus, the causes of action asserted by the Blakes set forth claims that are clearly different and distinct from the cause of action determined in "Suit 1".

Moreover, the facts and circumstances alleged by the Blakes suggest that they were unable to litigate their claims against CAMC in "Suit 1" because, as they allege, CAMC's misrepresentations and fraudulent conduct prevented them from learning of these claims until after the final adjudication of "Suit 1". In this regard, not only were the Blakes unable to raise their fraud and misrepresentation causes of action and to obtain a final resolution of these claims in "Suit 1"; but, they similarly were unable to foresee the consequences of not raising these assertions in the earlier action. Therefore, the claims raised by the Blakes in "Suit 2" could not have been litigated in the prior suit as a result of the alleged fraudulent conduct by and misrepresentations of CAMC. Based upon the particular facts and circumstances of the instant appeal, we find that the elements of *res judicata* are not satisfied in this case[7] and that this doctrine does not pre-

---

6. We wish to emphasize that our decision today, finding that *res judicata* does not bar the Blakes' claims against CAMC, is in no way intended as a blanket holding that would permit a defendant to sit on his/her rights, allow a default judgment to be entered against him/her, and attempt to later assert his/her defense(s) to the prior action by

filing a subsequent lawsuit. Rather, as our analysis of the facts and circumstances of the instant case will demonstrate, the application of *res judicata* is very much dependent upon the distinctive characteristics of a particular case.

7. That is not to say, however, that the Blakes will necessarily prevail in their lawsuit against CAMC

clude the Blakes' claims against CAMC.[8]

## III.

## CONCLUSION

In conclusion, we find that the circuit court erroneously barred further prosecution of the Blakes' claims by holding the doctrine of *res judicata* applicable to this case. Moreover, we also find that this matter was not ripe for disposition by way of summary judgment. Not only have the Blakes' allegations of fraud and misrepresentation raised a question as to whether CAMC is entitled to judgment as a matter of law, but there also remain "genuine issue[s] as to ... material fact[s]." *See* W.Va.R.Civ.P. 56(c). For example, the record evidence, at present, does not contain information sufficient to establish the elements of either fraud or misrepresentation as alleged by the Blakes. *See, e.g.,* Syl. pt. 3, *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996) (reciting elements for cause of action for fraud); *Lengyel v. Lint,* 167 W.Va. 272, 277, 280 S.E.2d 66, 69 (1981) (explaining components of actionable "fraudulent representations"). Likewise, the sparse record evidence has not yet been adequately developed to sustain the burden of proof required of the Blakes to prevail upon their claims of fraud and misrepresentation. *See Bowling v. Ansted*

*Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 472, 425 S.E.2d 144, 148 (1992) (stating that the elements of a cause of action for fraud "must be proved by clear and convincing evidence"). Therefore, consistent with our oft-repeated prior directive, we deem it necessary to remand this case to the circuit court for further factual development. *See* Syl. pt. 3, *Heydinger v. Adkins,* 178 W.Va. 463, 360 S.E.2d 240 (1987) (" 'When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development.' Syl. pt. 2, *South Side Lumber Co. v. Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721 (1967).").

Accordingly, for the foregoing reasons, we reverse the decision of the Circuit Court of Kanawha County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

---

upon remand to the circuit court. Our decision demonstrates that the Blakes have failed to satisfy the first two elements of *res judicata*. Further discovery in this case may very well indicate that the Blakes also cannot satisfy the third *res judicata* element in that they could have actually litigated their claims of fraud and misrepresentation in "Suit 1". Therefore, it is quite possible that CAMC may prevail upon a subsequent motion for summary judgment. These questions we do not decide, though, as the record presently before this Court does not contain sufficient evidence from which to make such a determination.

8. The Blakes suggest that their action against CAMC was properly before the circuit court, regardless of the applicability of *res judicata*, because Rule 60(b) of the West Virginia Rules of Civil Procedure permits a party to file an independent action in order to obtain relief from a final judgment. Although our resolution of this query is unnecessary given our determination of the case on the basis of *res judicata*, we opine that the Blakes' lawsuit most likely would have been appropriate pursuant to the independent action theory. *See* Syl. pt. 2, *N.C. v. W.R.C.,* 173

W.Va. 434, 317 S.E.2d 793 (1984) ("The definition of an independent action, as contemplated by *W.Va.R.Civ.P.* 60(b), is an equitable action that does not relitigate the issues of the final judgment, order or proceeding from which relief is sought and is one that is limited to special circumstances."). *See also* Syl. pt. 3, *N.C. v. W.R.C., id.* ("In order to obtain relief from a final judgment, order or proceeding through an independent action, the independent action must contain the following elements: (1) the final judgment, order or proceeding from which relief is sought must be one that, in equity and good conscience, should not be enforced; (2) the party seeking relief should have a good defense to the cause of action upon which the final judgment, order or proceeding is based; (3) there must have been fraud, accident or mistake that prevented the party seeking relief from obtaining the benefit of his defense; (4) there must be absence of fault or negligence on the part of the party seeking relief; and (5) there must be no adequate legal remedy.").