# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**STEPHEN U.,**
**Plaintiff Below, Petitioner**

**v.) No. 24-ICA-326** (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2023-C-877)

**THE STATE OF WEST VIRGINIA, SHERRI YOUNG, in her official capacity as Cabinet Secretary of the West Virginia Department of Health and Human Resources, MATTHEW CHRISTIANSEN, in his official capacity as Commissioner of the West Virginia Department of Health and Human Resources, Bureau for Public Health, and State Health Officer, and MATTHEW WICKERT, in his official capacity as the State Registrar for Vital Statistics,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Stephen U.[1] appeals the August 7, 2024, order of the Circuit Court of Kanawha County which dismissed petitioner's declaratory judgment action and granted the motion to dismiss filed by Respondents Sherri Young, Matthew Christiansen, and Matthew Wickert in their official capacities (collectively the "State Officials"). State Officials filed a response.[2] Petitioner filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Consistent with the Supreme Court of Appeals of West Virginia's long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] On appeal, petitioner is self-represented. State Officials are represented by John B. McCuskey, Esq., and Steven R. Compton, Esq.

At the heart of this appeal, petitioner challenges the designation of C.J.[3] as the mother of petitioner's children on their birth certificates. From the outset, we recognize that while this is petitioner's first appeal before this Court, petitioner has a long history of litigating this same issue before the Supreme Court of Appeals of West Virginia ("SCAWV"), beginning with the case of *S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4, 2019) (memorandum decision). As summarized by the SCAWV, a factual and procedural recitation of *S.U. I* is as follows:

> As this Court previously found, petitioner and [C.J.] were in an intimate relationship for approximately twelve years and have four children together, said children having been conceived in nonconventional ways. The parties initially attempted to conceive children through sexual intercourse, but ultimately utilized various alternative methods of fertilization due to the fact that petitioner was listed as a female on his birth certificate. According to petitioner, he was not a binary male or female at birth, although he has always considered himself to be male. Prior to the parties' relationship, petitioner had his ova harvested and stored, and these ova were used to conceive at least three of the parties' children through in vitro fertilization. As this Court previously noted, at the time of these procedures, [C.J.] believed that the embryos were from petitioner's sperm and an anonymous egg donor and she gave birth to all four of the parties' children. Eventually, [C.J.] became pregnant with twins, at which point the parties' relationship deteriorated and petitioner's history of verbal abuse toward [C.J.] worsened.
>
> Prior to the twins' births, petitioner attempted to preclude [C.J.] from being listed as the mother on the children's birth certificates by filing a Petition for Declaration of Parentage. According to petitioner he and [C.J.] entered into a custody agreement in 2005 that, in relevant part, required [C.J.] to serve as a gestational surrogate for their three youngest children and precluded her from asserting custody over those children. During prior proceedings in family court, petitioner's motion to amend the children's birth certificates to omit [C.J.] was denied. Importantly, after holding hearings to resolve the issues between the parties, the family court concluded that the purported Custodial Agreement was unenforceable and that [C.J.]'s name would remain on the children's birth certificates. Petitioner appealed this decision to the circuit court, which refused his appeal, and on to this Court, which affirmed the family court's ruling. In affirming the lower courts, we found that all of petitioner's assignments of error . . . [w]ere grounded on his

---

[3] Prior decisions of the Supreme Court of Appeals of West Virginia have consistently referred to this individual by these initials. For consistency, we will do the same.

contention that [C.J.] was nothing more than a gestational surrogate for the parties' three youngest children. We found that the family court resolved this conflict in [C.J.]'s favor and refused to disturb these findings. In ruling that the custody agreement was unenforceable, this Court unequivocally concluded that [C.J.] is the legal mother of all four children.

*S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824, at *1-2 (W. Va. Feb. 2, 2021) (memorandum decision) (cleaned up).

Since *S.U. I*, petitioner has continued attempts to relitigate those issues in subsequent litigation and appeals. Notably, in those appeals, petitioner has consistently argued that the birth certificates erroneously list C.J. as the children's mother because she is merely a gestational surrogate, and that petitioner is the biological mother of the children. However, those attempts have been soundly rejected by the SCAWV often on res judicata grounds. *See S.U. II*, 2021 WL 365824; *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption I*"), No. 20-0039, 2021 WL 4935772 (W. Va. Oct. 13, 2021) (memorandum decision); *In re The Children of: S.U. v. C.J.* ("*S.U. III*"), Nos. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476 (W. Va. Oct. 13, 2021) (memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption II*"), No. 21-0165, 2022 WL 293352 (W. Va. Feb. 1, 2022) (memorandum decision); *In re S.U.* ("*S.U. IV*"), No. 21-0258, 2022 WL 1556113 (W. Va. May 17, 2022) (memorandum decision); *see also S.U. v. Cent. Atl. Legal Grp.*, No. 20-1006, 2022 WL 293551 (W. Va. Feb. 1, 2022) (memorandum decision) (affirming circuit court's determination that petitioner is a vexatious litigant based upon petitioner's repeated attempts to relitigate issues involving C.J. and the children., including suing the law firm representing C.J. and raising the same arguments regarding surrogacy and the birth certificates); *S.U. v. C.J.* ("*S.U. V*"), No. 21-0322, 2022 WL 3905107 (W. Va. Aug. 30, 2022) (memorandum decision) (affirming the lower court's imposition of prefiling injunction against petitioner); *S.U. v. Cent. Atl. Legal Grp.*, No. 22-0441, 2023 WL 6862166 (W. Va. Oct. 18, 2023) (memorandum decision) (affirming circuit court's imposition of attorney's fees and costs against petitioner based upon vexatious conduct). Petitioner has also unsuccessfully attempted to relitigate the SCAWV's determinations from *S.U. I* in federal court. *See S.U. v. Wickert*, No. 21-1351, 2022 WL 34139 (4th Cir. Jan. 4, 2022); *Doe v. Crouch*, No. 23-1364, 2023 WL 4839360 (4th Cir. July 28, 2023), *cert. denied*, 144 S. Ct. 1061 (2024); *Roe v. Jenkins*, No. 1:20-CV-140, 2021 WL 1026524 (N. D. W. Va. March 17, 2021).

In its rulings on petitioner's subsequent appeals, the SCAWV has regularly stressed two important rulings from *S.U. I*.: "The first is that there was never a valid, enforceable gestational surrogacy agreement between petitioner and [C.J.]. . . . The second is that [C.J.] is the legal mother of all four children." *S.U. III*, 2021 WL 4936476, at *1 (citations and quotations omitted); *Adoption II*, 2022 WL 293352, at *1 (citations and quotations omitted); *S.U. V*, 2022 WL 3905107, at *1 (citations and quotations omitted). *See also S.U. IV*, 2022 WL 1556113, at *1 ("Further, we have stressed that [C.J.] 'is the legal mother of

3

all four children.'") (citations omitted). Notably, in *S.U. I* the SCAWV specifically found: "Our review of the record uncovers no error. . . . Succinctly stated, [petitioner] failed to submit competent evidence to overcome the presumption set forth in West Virginia § 16-5-10(e) that 'the woman who gives birth to the child is presumed to be the mother[.]' " *S.U. I*, 2019 WL 5692550, at *4.

Turning to the present case, petitioner filed a verified petition on October 2, 2023, followed by an amended complaint and petition for declaratory judgment (the "petition") against State Officials in the Circuit Court of Kanawha County on March 28, 2024.[4] The petition challenged the constitutionality of West Virginia Code § 16-5-10(e) (2006) ("For the purposes of birth registration, the woman who gives birth to the child is presumed to be the mother, unless otherwise specifically provided by state law or determined by a court of competent jurisdiction prior to the filing of the certificate of birth.").[5]

In the petition, petitioner alleged State Officials' application of West Virginia Code § 16-5-10(e) has caused petitioner ongoing injury because it automatically preempted and supplanted petitioner's status as the biological and legal mother of the children on their birth certificates in favor of C.J. who is merely a surrogate; created a de facto adoption of petitioner's children by C.J.; permitted C.J. to name the children without petitioner's consent; and the statute provides no means of redress for petitioner to correct or challenge the designation of maternity on the children's birth certificates. In other words, petitioner claimed that by applying this statutory presumption in favor of C.J., State Officials violated petitioner's constitutional rights with respect to due process, equal protection, and the First and Fourth Amendments. Petitioner also claimed to be entitled to the issuance of new birth certificates identifying petitioner as the children's biological and legal mother. Notably, C.J. was not named as a party to this litigation.

In lieu of filing an answer, State Officials filed a motion to dismiss on May 2, 2024, arguing that petitioner's petition was barred by the doctrine of res judicata. On August 7, 2024, the circuit court entered the order presently on appeal. In its order, the circuit court noted petitioner's long history of litigating similar or identical claims in our state and federal courts, as well as the SCAWV's repeated rejection of petitioner's repackaged arguments, which at their core have all sought to relitigate the surrogacy and maternity issues that the SCAWV expressly decided in *S.U. I*.

_____

[4] Petitioner was represented by counsel below.

[5] Although this provision was not substantively affected by the recent amendments to West Virginia Code § 16-5-10 (2024), we refer to the former version of the statute because it was in effect at the time the events giving rise to this case arose, and it was the law in effect when the present case was filed below.

In evaluating petitioner's petition under the res judicata doctrine, the circuit court noted the seminal case of *Blake v. Charleston Area Medical Center*, 201 W. Va. 469, 498 S.E.2d 41 (1997), which held:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Id.* at 469, 498 S.E.2d at 41, syl. pt. 4.

Applying those elements, the circuit court determined that petitioner was attempting to relitigate the same issues decided by *S.U. I* and its progeny; however, the court stopped short of applying the doctrine to bar petitioner's claims. Instead, the court opined that because State Officials and C.J. were not named together in petitioner's earlier state court actions, privity did not exist between the parties. The circuit court also found that because the federal cases, which named State Officials only and challenged West Virginia Code § 16-5-10(e), were not dismissed with prejudice, but rather, on the basis of subject matter jurisdiction and the *Rooker-Feldman* doctrine,[6] there was no final adjudication on the merits.

Nevertheless, the circuit court determined that petitioner had litigated the application of West Virginia Code § 16-5-10(e) in *S.U. I*, and the SCAWV expressly found that petitioner had failed to overcome the statute's presumption. Therefore, the circuit court concluded that petitioner was afforded due process, petitioner's constitutional rights were not violated, and that petitioner was precluded from further litigating those claims in this case. The circuit court dismissed the petition, and this appeal followed.

In this appeal, our standard of review is de novo. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").

---

[6] Applied by federal courts, the *Rooker-Feldman* doctrine "deprives district courts of subject matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Doe v. Crouch*, No. 2:22-cv-00328, 2023 WL 2711632, at * 4 (S.D. W. Va. March 30, 2023) (citations and quotations omitted), *aff'd*, 2023 WL 483960 (4th Cir. July 28, 2023), *cert. denied*, 144 S. Ct. 1061 (2024).

On appeal, petitioner raises three assignments of error. However, it is unnecessary for this Court to address these specific arguments because petitioner's assertions are once again hyper fixated on petitioner's overarching contention that C.J. is a surrogate, improperly listed as the children's mother on the birth certificates, and that petitioner is the biological and legal mother of the children. Upon review, we agree with State Officials that petitioner's present petition is barred by the doctrine of res judicata and, thus, for the reasons set forth below, we find no error in the circuit court's ultimate decision to grant the motion to dismiss.

As previously noted, res judicata requires the existence of three elements: (1) a final adjudication on the merits; (2) privity; and (3) same or similar claims in the current and prior action. *See Blake* at 469, 498 S.E.2d at 41, syl. pt. 4. We find each of these elements are decidedly established in this case.

To begin, we find both the first and third res judicata elements are easily met. Before both this Court and the SCAWV, petitioner continues to offer repackaged arguments regarding the children's birth certificates, which at their core, seek "to divest his children's mother of her custody of their children and even her status as the children's mother." *In re Adoption of E.U.*, 2022 WL 293352, at *1 (W. Va. Feb. 1, 2022) (memorandum decision). Even in this appeal, petitioner bases this constitutional challenge to State Officials' issuance of the birth certificates upon the contention that C.J. is merely a surrogate and that petitioner is the biological mother of the children. Critically, however, the SCAWV expressly determined in *S.U. I* that there was never a valid gestational surrogacy contract, and that C.J. was the children's legal mother. *S.U. I*, 2019 WL 5692550, at *4. The SCAWV has repeatedly reiterated those two determinations as dispositive of petitioner's long list of subsequent appeals that fundamentally sought to relitigate *S.U. I*. Additionally, *S.U. I* specifically concluded that petitioner failed to overcome the statutory presumption of West Virginia Code § 16-5-10(e). *Id*. at *3-4. Similarly, these alleged constitutional violations were capable of being resolved in *S.U. I* but petitioner failed to raise them. Thus, because those same determinations are requested in the present case, we conclude that the first and third res judicata elements are established.

Finally, we address the element of privity. Here, the circuit court summarily opined that because State Officials were not named along with C.J. in the earlier state court actions, the parties did not stand in privity. We disagree and find the circuit court mistakenly limited the scope of privity as recognized by the doctrine of res judicata. As the SCAWV has previously explained "there is no generally prevailing definition of privity which can be automatically applied to all cases involving res judicata." *Baker v. Chemours Co.*, 244 W. Va. 553, 562, 855 S.E.2d 344, 353 (2021) (citations and quotations omitted). However,

> [i]n determining whether privity exists, courts generally employ a functional analysis, which entails a careful examination of the circumstances of the case

6

and the rights and interests of the parties to be held in privity. Thus, the question of who is a privy is a factual one requiring a case-by-case examination. . . . In general, it may be said that . . . privity involves a person so identified in interest with another that he represents the same legal right.

*Id.* (citations and quotations omitted). In other words, "privity 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within the res judicata.'" *Id.* (citations omitted).

Under the facts of this case, we conclude that State Officials stood in privity with C.J. in the prior state actions. It is undisputed that State Officials are all members of our state Bureau for Public Health (the "Bureau"), which is the state agency responsible for the administration and maintenance of our state's only vital statistics database. *See* W. Va. Code § 16-5-2(a) (2006) (establishing the vital statistics section of the Bureau as the sole vital statistics system in the state); W. Va. Code § 16-5-5 (2006) (setting forth the powers and duties of the State Registrar, which includes the administration and enforcement of article 5, chapter 16 of our code and designates the State Registrar as the custodian of all vital statistics records). Moreover, pursuant to the West Virginia Code of State Regulations, all vital statistics documentation is the property of the Bureau, held in the custody of the State Registrar, and the issuance of all certificates is subject to State Registrar approval. *See generally* W. Va. Code R. § 64-32-2 (2012).[7]

The recurrent target of petitioner's repetitive litigation throughout our state courts has and continues to be the propriety of C.J.'s designation on the children's birth certificates and petitioner's unrelenting demand that the birth certificates be corrected to identify petitioner as the children's mother. Here, petitioner attempts to distinguish this case from prior proceedings by omitting C.J. as a party and replacing her with State Officials in an obvious attempt to escape the SCAWV's decision in *S.U. I*.[8] However, the relevant statutes and regulations establish that the Bureau is the state agency charged with the exclusive control and administration of our state's vital statistics records and the only state agency vested with the authority to issue birth certificates. The performance of such duties requires State Officials to comply with West Virginia Code § 16-5-10(e). Thus, because the Bureau, through its State Officials, issued the birth certificates naming C.J. as the children's mother, and would have been the party responsible for issuing a corrected birth certificate had petitioner prevailed in *S.U. I*, we conclude that under the facts of this

---

[7] Although substantively unchanged by recent amendments, this version was in effect at the time of the children's birth and issuance of the birth certificates.

[8] Arguably, the Bureau and State Officials should have been named as defendants in petitioner's prior actions. Similarly, C.J. should have been named as a party to the present petition. Regardless, the omission of either party does not defeat the existence of privity in this case.

7

case, an inextricable relationship exists between State Officials and C.J. As such, privity exists for the purposes of res judicata.[9] In other words, to the extent the Bureau has a role in the issuance of the birth certificate, it is merely ministerial and based on information provided by C.J.

Therefore, we conclude that petitioner's petition is barred by the doctrine of res judicata and find that the circuit court did not err by granting State Officials' motion to dismiss.[10]

Accordingly, the circuit court's August 7, 2024, order is affirmed.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[9] As the SCAWV has recognized, the privity requirement is "obviously grounded in due process concerns." *Baker*, 244 W. Va. at 562, 855 S.E.2d at 353. As petitioner was the plaintiff in *S.U. I* and had the opportunity to litigate petitioner's claims in that matter, there are no due process concerns related to privity in this case. *See id.* at 563, 855 S.E.2d at 354 (finding no due process concerns related to privity because the party it was asserted against was the plaintiff in the prior litigation).

[10] The Court acknowledges petitioner's recent filing of two notices of additional authorities in which petitioner points the Court to newly enacted legislation, West Virginia Code §§ 5-32-1 to -9 (2025) and West Virginia Code §§ 49-12-1 to -5 (2025). Petitioner contends that these new statutes are germane to present case. However, neither piece of legislation is currently in effect. Thus, we decline to consider these statutes in this appeal.